Good afternoon, Illinois Appellate Court, 1st District. Court is now in session. The First Division, the Honorable Justice Carl Anthony Walker presiding. Case number 1-8-1-0-0-2, People v. David Ticey. And good afternoon, everybody. I'm Justice Walker, and I have here with me Justice Hyman and Justice Pierce. And I'd like to have the attorneys to please introduce yourselves. Good afternoon, Your Honors. My name is Brian Rayna. I'm with the Office of the State Appellate Defender, and I'm representing the appellant, David Ticey. Good afternoon, Assistant State's Attorney, Susan Wobbekind, on behalf of the people. And Mr. Rayner, how much time do you need today? Your Honors, I would request about 15 minutes or so, and then five minutes in rebuttal, if that's okay with you. Sure. And Ms. Wobbekind, how much time do you need today? About 12 minutes. 12 minutes. 12 total? Okay. All right. Well, if you run short of that, and because we're asking you too many questions, just let us know. And if you have a point you really wanted to make to us, we'll give you both time to do that. Thank you. Mr. Rayner, you can get us started. Your Honors, I raised several issues in the opening brief, and would be happy to take questions on any of those issues. But given the recent case law that came out relevant to Issue 2, that the trial court erred in providing an accomplice instruction where the co-defendant's testimony exonerated Ticey, I plan to focus on that issue. Your Honors, at David Ticey's jury trial, Officer Pittman testified that she purchased one packet of narcotics from the co-defendant, Tommy Goodman, and that Ticey passed this packet to Goodman prior to the sale. During the defense case, Goodman testified that he alone possessed the narcotics and that Ticey was not involved in the sale. He explained that this was his only packet of narcotics. He planned to use it for personal use, for pain relief, and decided to sell it to Pittman because he was attracted to her. Then he testified, actually, more specifically, he had two packets. He had two packets in his possession. He had used one, right? Correct. Which is important. Look, he's the guy in pain, right? Goodman's the one who needed to go to the hospital because he's in such pain. That's correct, Your Honor. He's not an addict, right? Yes, that is correct. He did have two packets the day of the incident. At the time that he and Ticey were together, he had only had one of those packets left. He used the other one prior to Ticey's arrival. But Ticey, excuse me, there was no evidence other than Officer Pittman's testimony and Tommy Goodman's testimony regarding Ticey's involvement. The only question for the jury was, therefore, whether they believed Goodman or Ticey regarding whether Ticey passed this packet of narcotics to Goodman. By providing the jury with IPI 3.17, which instructed the jurors to consider Goodman's testimony with suspicion and caution, the court cut the heart of the defense, attacked the deck against Ticey and denied him fair trial. The state is unable to cite any First District case holding that an accomplice obstruction was properly applied to a defense witness testimony. Let me go back to what you just said. Yes, Your Honor. By having this accountability instruction, doesn't that suggest that the state believes that both narratives could be true? That is, that Goodman's narrative could be true and Pittman's narrative could be true. Well, Your Honor, I assume you mean the accomplice obstruction. You said accountability, but I presume you meant accomplice. No, I don't think so, Your Honor, because what the state is asking the jury to do with that instruction is to disbelieve the defense testimony based on its existence alone, or at least to look at it suspiciously. I mean, by the plain language of the instruction. So, you know, whether the state believe they both could be true, I'm not sure if it matters if the state is saying, hey, this could both be true. But we don't want you to look at them the same. We want you to look at this as less likely to be true. And I mean, the state's argument trial was Goodman's testimony wasn't true. So I don't think in this case we can say that the state believed his testimony was true. I want to let you finish your point, counsel, but I wanted to come back to something you said earlier. In Illinois, we have one appellate court which sits in five different districts. So it doesn't matter whether or not cases from the first district are cited cases from any appellate court district. Trial courts are bound are bound by those cases. So it doesn't matter that it was the second district that made a recent decision. The trial courts are bound by those decisions. We have one appellate court that sits in five districts. Absolutely, Your Honor. And the my next point was actually that the cases outside of the first district or excuse me, the appellate courts outside of the first district that have addressed this issue have also ruled favorably for Tyson. All of the other districts that have weighed in have found that these accomplished instruction should not be given when a defense witness's testimony exonerates the defendant like it did here. In people leave Fane, the second district appellate court recently affirmed that principle. And in that case, the co-defendant pled guilty to the underlying offense, testified at the defendant's trial that the defendant was not involved. And the court found the instruction was improper. Fane is consistent with the purpose of the accomplished instruction and the plain language of the instruction itself. The instruction states, and I quote, when a witness says he was involved in the commission of an offense with the defendant here, could have been explicitly testified that he was not involved in the commission of an offense with Tyson. Tyson did not know that Tyson did not participate in the sale of the narcotics to Officer Pittman. This court has recognized also that the purpose of the instruction is to protect the defense from a witness who might be motivated to testify favorably for the state, perhaps in an effort to obtain leniency. That was not a risk in this case. The instruction was particularly prejudicial where the jurors were never admonished pursuing properly to 431 P that it could not hold Mr. Tyson's decision not to testify against him and where the judge incorrectly answered a question regarding the law of accountability that allowed for a conviction that was broader than what the evidence warranted. Are you talking to the to the note? Yes, Your Honor. Yes. Why doesn't that note ask a question of law? I mean, you're saying it's a question of fact. Yes, Your Honor. I think, you know, if the question were presented in a law school classroom in a general, you know, vacuums, you know, could we find accountability without touching and passing? Yes, but applied to the facts of this case. The answer is no. The only evidence for the jury to decide. No, Your Honor, because the the jury's this wasn't a law asking for clarification of what the law and accountability was. They were asking whether they could apply facts other than the only evidence admitted regarding accountability to sustain a conviction based on accountability. So, it's not the jury's. I'm sorry, go ahead. Well, why do you say that? It could be interpreted as saying the jury's asking, does Tyson have to have touched the drugs, or have you found guilty. Right. Is that right? That was a specific question. Does, do we need to find that he touched and passed the drugs? Right, that was a specific question. Okay, why, and so I'm not trying to be clear on how you differentiate that from a, that it's a factual inquiry rather than a legal standard that they were asking about. I mean, the judge interpreted it as a legal standard, but why shouldn't we? Well, for instance, a question that would be a question for regarding the clarification of law would be something like, what type of evidence is needed to support a conviction based on accountability? Well, isn't it necessary to have evidence that he touched and passed? Isn't that the question? In this case, yes, that is the question. And the answer is yes, because that was the evidence the state presented regarding accountability. There wasn't other evidence of accountability. So by answering no, the court allowed the jurors to define basically for themselves what they believed accountability meant. Your honors, the evidence in this case was closely balanced, and the instructional error warrants reversal on that basis. As I discussed earlier, the ultimate outcome depended merely on whether the jury believed Officer Pittman or Tommy Goodman. The other evidence that is discussed in the state's brief, the testimony of the other officers, the video evidence. This all just corroborates the fact of the transaction, which was acknowledged by both parties and wasn't in dispute at trial. The only question in dispute at trial was whether Goodman, excuse me, Ticey passed the narcotics to Goodman and thus was involved in the sale. For those reasons, I would ask your honors to reverse Mr. Ticey's conviction and remand his case for a new trial. Thank you, Mr. Raynor and Ms. Schwabachai. Yes, your honors. I'll discuss issue two as well. In this case, the evidence did just... Before you get to that, just to get out of the way. On issue one on the ZEHR, is there a reason that you haven't filed something to correct the error in your response brief with regard to citing the judge's ZEHR statements at the first trial? Rather than citing, which is irrelevant here, instead of citing the second trial, which was pointed out in the reply. Why didn't you go about telling us that that was incorrect in your brief? That's a good question, your honor. I apologize for that. I honestly did not realize that that was an option to do so. And going forward, I will. I mean, we're not saying it wasn't anything but an honest mistake. But once it came to your attention, because we still believe that you thought, you know, based upon the fact you didn't want to correct it, it could be assumed that you disagreed with that part, which you're saying you don't, you admit... No, correct. We do concede it's the wrong passage. Okay, I apologize, your honors, for that. I could have seen some of the arguments you made, too. I mean, you made a... Once that was pointed out, you might have made some different argument because you're talking about a different statement by the judge. Yes, I agree. I agree. Thank you. Yes, I'm sorry about that. Yeah. And we appreciate the apology. You'll be surprised how often attorneys will try to defend the inappropriate act as opposed to just simply apologizing. So we really do appreciate that from you. Oh, thank you. No, I am willing to admit when I am wrong. So, yeah. Okay, given that acknowledgement, what's the relief available to the defendant if the judge does not admonish the jury on the fourth factor? Well, your honor, we would say that the judge did still admonish as to the fourth factor. When? The passage that he actually said in pertinent part was the accused, which is their perfect right under the law, may not testify. And he also said it is perfectly fair and okay under the law for them to choose not to testify or call any witnesses. If you don't understand that or have a disagreement with that concept, raise your hand. And in so stating the court did discuss the subject matter of the fourth principle. Well, the fourth principle is you cannot hold it against the defendant for not testify. Correct. And did the court ever address that? Don't is anybody going to hold it against? Do you have a problem with not holding it against the defendant if he doesn't testify? Did the judge ever get into that during jury selection? Yes, the court did not use those specific words, but the court, as you know, does not need to use those specific words by stating that it was perfectly fair and okay under the law and that it was not not okay to view that the defendant did not testify. He did tell the jurors not to view it in a negative light. But that's not the same. He never said that. I think what Jessica said, he never said the fourth factor is that he did not testify, it can't be used against him. That's the important point. And you're, there are no words there that indicate that, which is what the instruction is supposed to say. They have to know that you can't hold it against them. And one of the arguments you make is, well, never mind. He said it later on, way later at the end, which is not the same as doing it now and he's got to do it now. And, and, you know, I appreciate your honesty in the first part, but here, where, where is it? I mean, the words you use do not say, don't hold it against him. How is the jury to know that? Well, I believe that by saying it's not unfair and it's his perfect right. And it's okay that he is saying not to view it negatively. Any cases, is that any case, you have any case where that type of loose language has been found permissible for that fourth. I have not found that specific language. No, I have found that it's okay if they do not specifically state those words, and that they cover that subject matter. But how does that you keep reading the same language, and I'm not asking you to read it again. But how does the language that you read twice, say you, you the jury can't hold it against Tyson. Um, I think it's saying, it's not a negative thing if he chooses not to testify and by saying it's not not negative. It's saying that you cannot use it. And then, you know, against him. That's, isn't that that's the jump. I mean that that's where where there's a difference between the both sides. Because, again, you're, you're like you're dealing with lay people. And the zero principle is very it's one line it's not hard to understand it. But, but to not hold it against somebody is different than saying well you know it's it's different than saying he doesn't have to testify. Yeah, right. That's a lot different than saying, and if he does not testify. You don't hold it against them. I mean that's that's the logic because otherwise, if the fourth principle was not necessary it wouldn't be there because they're covering it under the third. Correct. But the Supreme Court has said no. Give the third and the fourth. Let them know that he doesn't have to testify in if he doesn't testify you can't hold it against that appears to be missing from this instructional aspect of the void here. Correct. Well, I, I believe that that that the words he used to cover the subject matter of it. Okay, let's assume that we don't agree with you. Remedy. The remedy well the evidence is not closely balanced, so defendant has not met his burden under plain error. It is closely balanced or not closely balanced. And why do you say that, because this is this didn't come down to a credibility, a credibility contest on the one side we had the people's witnesses that were credible consistent corroborated each other corroborated Wait, wait, wait, wait, wait, wait, wait, they didn't do any of that. We only have Pittman. I mean, everybody else didn't see it didn't hear it couldn't see it I've looked at that video, the two videos, eight or nine times, put it on my screen. I slowed it down. You know, and the guy in the camera I'm seeing the same view he did. Well, even if you wanted to omit the video. Everybody else. Okay, isn't it a contest between Pittman and Goodman, I mean that's what it comes down to. So we also have the piece of paper with the name and phone number in evidence. So we do have some physical evidence of what happened in the car. Correct. We know he was in the car. Physically, we have the piece of paper with defendants name and phone number that he handed to Officer Pittman that then office name did it it's just so it had his name. Correct. Well, that's not his name. But in any event, that's not a crime to give somebody a piece of paper with your phone number on. No, but it corroborates what officer Pittman. It collaborates that he was in the car. And then maybe he was trying to get a date later on. Perhaps, perhaps. But the evidence is only closely balanced just because we have two witnesses that we're looking at that doesn't necessarily mean it's closely balanced closely balanced means that you have two equally plausible versions of events. Okay, why don't we have it. Why here we don't. Why. Here we don't because on the one hand we have Officer Pittman, the veteran police officer, whose testimony, just makes sense, and it's consistent within her testimony as to that Goodman and defendant works together that Goodman use the term we throughout the drug addict, a convicted felon, and a 40 year friend of defendant. So, just there in his testimony there's inherent bias. And then his within his hair and by I'm not sure that you say, inherent bias. The jury doesn't know Goodman and they don't know Pittman. Couldn't a police officer also have inherent bias. Potentially but that didn't show in her testimony that she had any in here. But, but, again, the question is whether it's closely balanced or not. Right. And again, both both individuals, just because somebody has a record that doesn't mean that they can't be believed. No, and I'm not saying that I'm saying that's one factor within the entirety of his testimony where his testimony just didn't make sense that he was in such dire pain that he had to go to the hospital, but he was willing to go out of the way and sit in the cold car for 40 minutes So, so people who have to go to the hospital, and they guess, and they don't have enough money that that's okay that they, they have to rush to the hospital even without enough guests that people, people take buses when they're in pain, that could take an hour or two. So, we're not talking about anything like that, just because somebody stops on the way. I mean there's different layers of pain. He said dire pain excruciating pain, such bad pain that the Norco wasn't working. I mean that's serious pain, but all of that because that's not the issue the issue is whether or not the evidence was closely balanced and whether or not it was closely balanced you had to competing witnesses one saying one thing another saying another. Correct. So how does it not come. How is it not closely balanced, because it's not closely balanced just because there's two competing witnesses, it has to be two equally plausible versions. And I submit that defendant is not plausible. So it's not plausible that he was simply sitting in the car, and that the guy sitting next to him but again the officer was only on the passenger side the entire time that that person communicated with the officer and that person asked the officer to dress, and that person told the officer that I have one I don't have to. Why is that not plausible. It's not. It's not equally plausible. Well, and who decides that whether it's equally plausible or not. Well that's a question for the jury for you. Okay. Alright, so let's move on though, please. Okay. So, as to that first issue, I would argue that any error does not rise to the level of plain error because the evidence was not closely balanced. This is not an issue where second prong error comes into play. I have a question. If I may, just the same. So if, if we find that the fourth factor was not told to the jury. And we find that the evidence was not is closely balanced, then the remedy is what reversal or neutral. Neutral. Okay. Thank you. The standard is closely balanced to Justice Walker's question. I thought you said that it wasn't equally equally plausible, plausible, that's not the standard is it. Well, yes, because evidence is closely balanced, according to the closely balanced doesn't equal equally plausible, that's not the standard the standard is. Is that that is it well said he says that evidence is closely balanced when it comes down to a credibility contest. It's a credibility contest when the evidence is when the testimony is equally plausible. So ultimately the question is, were the two testimonies equally plausible to determine whether it did come down to a credibility contest, and that's it was closely balanced. Okay. Okay. As to the second issue, the evidence justify the accomplice instruction here. So what's your Rivera, it's okay to give the accomplice instruction when the witness testifies for the defendant as well as for the state. And the court's decision to give the, the instruction. Why is consistent with Rivera, it was consistent with our Supreme Court holding in Kirchner that said that the instruction is proper whenever probable cause exists to believe the witness was guilty of the offense as a principal or as an accessory. It was consistent with the notes on the instructions that say it should be given anytime an accomplice testifies. And it just makes sense that the accomplice instruction applied here, where Goodman's testimony was suspect. And he was likely biased and testifying for defendant, and they were co defendants arrested together at the scene of the crime. Goodman pled guilty to a lesser charge in relation to the end. Nothing in Rivera, Kirchner, or the notes, say that it's not applicable. If a witness completely exonerates the defendant. And I would argue that Goodman did not completely exonerate defendant. Anyway, in his testimony. How do you reconcile that thought with people be paying people be died. Your thought that both of those cases are really clear that in the case where an accomplice testifies for the defendant, and does not implicate the defendant instruction should not be good. Well, okay so faint as a second district case following second. I just told you that doesn't matter that we have one appellate court in the state of Illinois. Okay, don't don't tell me it's a second district. Sure. Well, in both faint and died, defect the witness testified that defendant was not present had absolutely no idea that the crime was taking place here Goodman testified that defendant is sitting next to him, while this crime is taking place. Well, how would he know, but he didn't know the testimony he had nothing to do with it, he didn't know that this was going to happen, that's the testimony Goodman, just because he's sitting next to, that's the whole idea, you know, the fact is, it's quite plausible to use your word that that Tyson was just driving this guy this guy had had the drugs and and he needed the money and he figured he could buy some more if she wanted it. No, they went there, tell me cigarettes. But when you're trying to determine whether a defendant is accountable, then you need to look at his intent, and the intent is generally determined from the surrounding circumstances. So one of those surrounding circumstances is that defendant sat there, while, if we're going to, if we're going to take Goodman's version of events that defendant sat there while Goodman dealt drugs without any protest. He didn't leave after the drugs were stolen they were still sitting in this, excuse me sold he was still sitting there when the officer. If somebody sit next to us, all of a sudden sold drugs, what are you going to do. I say get out of my car. Well, maybe not, maybe not, maybe not, maybe not, but that's maybe not and he doesn't have to get out of the car, because the question is where's the shared intent. If I'm just sitting in the car and somebody in the passenger seat does something, and I'm surprised, which is what Goodman said happened. How's that a shared intent. Well, the shared intent is that defendant drove Goodman to the two fifth and Whipple, they sat there selling the cigarettes which show that they were working together, then defendants sat there while Goodman did this deal with officer Pittman. So he's supposed to get out of the car and run. Is that a good idea. That's not a good idea. It wasn't like officer Pittman just walked up and they immediately did the drug deal they had a little go back and forth, where defendant had the opportunity to say no we're not doing this to drive away to say get out of my car. He doesn't have to say anything he's under no obligation to say this happened all of a sudden, we're talking about seconds, the whole the whole sequence is in seconds. Well the intent is something that right it needs to be inferred from the totality of the circumstances, and the totality of the circumstances here, show that they were, they were working together on cigarettes. Well and then officer Pittman testimony, saying, then they're in your words equally plausible. Well, I'm saying they're not equally plausible. They are not equally plausible correct and that's the question. It's only because she's a police officer and Goodman isn't that because Goodman is a drug addict a convicted felon. His testimony was inconsistent throughout he was inconsistent as to how long he knew defendant how long they had been sitting in the car. Is it important if it was 20 years or 40 years. It just goes to show that he's not being 100% honest he didn't know that, how do you know maybe you know people say 40 years well maybe it was closer to 20 years. Well I mean if you're going to just take that one little piece of the testimony but it's throughout the testimony where he continues to do that. Give me another example. When they say how long were you sitting in the car he said 30 to 40 minutes and then the defense counsel said Are you sure it's that long could have been less than 30 minutes and he said, yeah, could have been and then defense said 10 to 20, and Goodman said, yeah 10 to 20 I don't know. Okay. He said he didn't know. It says he gets 30. I mean, it's 10 to 30, you asked me how long a football field is without my knowing it's 100 yards. I don't know, you know, I could. Whether he's whether he doesn't mean somebody like that's my point. Well okay but you know what, let's just say he. He's not intentionally lying whether he's intentional about it or not, it's still not in inherently credible. If he doesn't really know what he's talking about. Either way, if it's intentional or not intentional if he doesn't remember exactly how everything went down. It's still not people have have selective memories, and that's why we have cross examination you know that's that's the whole business of our legal system. And then but this was actually happening on direct. So, right, which shows that, you know, he might be didn't know, don't forget. I mean he's got troubles of his own, and not everybody remembers thing and this, you know what happened, it was done quickly. And he was arrested, and a lot of time has passed. You're expecting people to remember, you know specific details, and they got to be down to the minute. In order to to pass your buster, and he actually never did testify that he was the one who wrote down the phone number on the piece of paper and defense. Well actually defendants reply brief says it was defendants name and number on the paper. So, looking at the totality of the circumstances, but that's different to say that he wrote it down. We don't know who wrote it down. Isn't it, that's his phone number, they can, and his name doesn't mean Tysie wrote it down it could have been written down by Goodman. That's true. That's true. That officer Pittman said that that defendant wrote it down. And so, as to the second issue. The instruction was proper for the reasons I stated. And even if it was not proper. Again, the evidence was not closely balanced. As to the jurors note, if you'd like me to address that as well, I would say, the court was properly responded to that no, he should have the court should have responded to the note it was not a question of law was a question of fact. And excuse me I'm sorry he did not answer the question of fact it was a question of law. Corrected yourself. See, I told you I was willing to do it. So, do you have to touch and pass to be found guilty is not a question of fact it is a question of law, do you have to actively participate in a crime to be found guilty. The answer is no, which goes to the second part, the courts response was proper. You did not have to touch and pass to find defendant guilty. And as to that, would you like me to do the other issues, issues that defendant didn't touch upon. Does anyone have any questions on the other issues otherwise I'll, I'll rest on my brief. Okay. Thank you. We respectfully request that you affirm defendants convictions and sentence. Thank you, Miss Lubbock and Mr Anna. Thank you, Your Honors, just briefly, with regards to the 431 be issue as your honors noted there was no direct statement regarding the fourth principle which is required. The evidence was obviously close the state's argument about equally plausible versions of events is basically proposition cited, I think by the Supreme Court and people be nailer. But that that is not that case doesn't limit what is a closely balanced case I mean obviously when you have as a state conceded two versions of events and the only question is which to believe that's a that's closely balanced case. As far as do they have to be equally plausible. Well, Your Honor, I mean, as I believe it was your own question. Who's to make that determination, there was there I'm asking, I mean, these are two equally plausible versions of events, either one of them could have been true, there's none was corroborated more than the other. So these are two equally plausible versions of events ultimately, you know, no I think if you have two witnesses testifying to two different things. That's a close case, but this one they are equally plausible versions of events because we lack cooperation of either version. But my question is, is that is that the standard of closely balanced. Right. No, I mean, that is just a type of closely balanced case I mean a case is closely balanced when the evidence is close, and I mean when we only have one witness on one side basically and one on the other, and the question suited who to believe that's close case. So, in every case where there's two witnesses that doesn't necessarily mean that closely balanced you're not applying that. Obviously every case is different. If you had a case where like one of the witnesses had maybe a prior statement that contradicted the trial testimony on top of that was repeatedly impeached. Sure, then it's not as close. There's nothing like that in this case I really think when we're looking at this case there's really no question that the evidence was close, and the versions were equally plausible, even though they don't necessarily even have to be. Regarding whether the jury instruction issue and whether the testimony of Goodman completely exonerated Ticey this case is completely consistent with that were basically the testimony put it, the witness at the scene. But there, as the dog court noted, there was no other evidence regarding the commission of the offense the commission of defense here is the delivery of the narcotics so you know, the state is arguing that Ticey sitting in the car is enough. The law of accountability states that it's not under the law of accountability, the mere presence of the scene is not enough. So, the instruction was improper in this case, and was likely to tilt the scales against Ticey. Oh, and just a final point regarding the name sold on the note, there was no evidence that Mr Ticey went by that name. And Mr Goodman stated himself he wanted officer Pittman to have his number because he wanted to try to meet up with her. If your honors have no further questions. So your, your, your implication is that the note belong to Goodman Goodman wrote it. That is, um, from what you just said I'm just trying to well that it was at least. Even if Mr Ticey wrote it, it was, you know, Mr Goodman giving her his number. So, when you say something, whose number was his goodness I mean I Goodman denied that my notes at least state that Mr Goodman denied that Ticey wrote down his number price zero down Ticey's number. So, you know, even, even if Ticey gave that note to the officer himself, and signed it with his own name which he didn't. I mean this happened after the fact of the transaction and related to, you know, something like a in the future, so I don't think that that would even implicate him in that case but again that's not the case we have. I believe that's, that's all I have, unless your honors have any other questions. The relief for 431 be as well as a new trial. Your honors with us, based on those arguments that you reverse Mr Ticey's conviction and remand his case for a new trial. Thank you, Mr. And what we can appreciate you both, and your excellence, and have a good day.